UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGIA-PACIFIC GYPSUM, LLC,

     Plaintiff,

  v.

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS LOCAL 117 and
ARTHUR POLO,

     Defendants.

CASE NO. C11-5497BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendant International Brotherhood of Teamsters Local 117's ("Union") motion for summary judgment (Dkt. 11) and Plaintiff Georgia-Pacific Gypsum, LLC's ("GP"), cross-motion for summary judgment (Dkt. 14). The Court has reviewed the briefs filed in support of and in opposition to the motions and the remainder of the file and hereby grants GP's motion and denies the Union's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 29, 2011, GP filed a complaint against the Union requesting that the Court vacate an arbitration award. Dkt. 1.

ORDER - 1

On September 9, 2011, the Union filed a motion for summary judgment. Dkt. 11. On September 21, 2011, GP responded and filed a cross-motion for summary judgment. Dkt. 14. On October 7, 2011, the Union replied to its motion and responded to GP's motion. Dkt. 20. On October 14, 2011, GP replied to its motion. Dkt. 21.

## II. FACTUAL BACKGROUND

The relevant facts are not disputed. Arthur Polo ("Polo") has worked for GP for over 25 years. Polo has never been disciplined for violating any company policy, has no history of drug or alcohol abuse, and has no record of being intoxicated on the job.

The weekend prior to September 27, 2010, Polo visited a family friend who had been recently diagnosed with terminal cancer. Polo admits that he drank and snorted a small amount of cocaine with the friend. On September 27, 2010, Polo submitted to a random drug test. Polo failed the test and a subsequent retest of Polo's sample confirmed the failure.

On October 12, 2011, GP terminated Polo's employment. GP contends that it was contractually bound to terminate Polo pursuant to Article 19 of the Collective Bargaining Agreement ("CBA") between the Union and GP, which provides as follows:

> Georgia-Pacific is committed to providing a safe workplace for all employees. It is in the interest of the employees, the Company, the Local Union and the community that the Tacoma, WA facility remains free from employees reporting for work or working under the influence of illegal drugs, controlled substances and/or alcohol. This policy is considered a living document and is subject to change as applicable with Federal and/or State law. The Union will be notified of changes as they occur.
> Elements of the Drug Testing plan include:
> (1) An employee assistance plan
> (2) A Medical Review Officer review of all positive results
> (3) Random testing procedure
> (4) Reasonable suspicion, for cause, and post accident testing
> (5) **All positive test results will result in termination**

Dkt. 15, Declaration of Scott G. Seidman ("Seidman Decl."), Exh. 1 at 22 (emphasis added).

The Union filed a grievance on the termination. The parties selected an arbitrator and a hearing was held on March 29, 2011. On June 6, 2011, the arbitrator issued a decision and found as follows: "There was not just cause for the termination of Mr. Polo after 25 years of unblemished service. The punishment is excessive based on the work record of [Polo]." Seidman Decl., Exh. 2 ("Decision") at 9 (Decision pagination). The arbitrator ordered that Polo be conditionally reinstated pending subsequent drug tests. *Id*. at 9–10.

## III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, the facts are undisputed and the parties only ask for a determination whether the Decision should be vacated as a matter of law.

**B.     Standard of Review**

"It is well-settled that federal labor policy favors the resolution of disputes through arbitration; thus, judicial scrutiny of an arbitrator's decision is extremely limited." *S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL–CIO*, 265 F.3d 787, 792 (9th Cir. 2001). Under § 301 of the Labor Management Relations Act, an arbitration award is subject to vacatur only in a "narrow" set of circumstances:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Id*. at 792–93.

ORDER - 3

**C.     The Parties' Motions**

GP contends that the Decision must be vacated because it did not draw its essence from the CBA and the arbitrator dispensed "his own brand of industrial justice." Dkt. 14 at 5. The Court agrees. Although sympathetic to what the arbitrator deemed "excessive" punishment, the Court finds that the Decision does not draw its essence from the parties' CBA. The arbitrator's desire to enforce a just punishment based on the facts, or dispense his own brand of justice, is the only plausible explanation for the Decision and his award of conditional reinstatement.

The arbitrator determined that "just cause" was an element of the CBA's drug policy. *See* Decision at 4–5. Under Ninth Circuit case law, an arbitrator decision "draws its essence from the CBA when it is based on language in the CBA." *SFIC Props., Inc. v. District Lodge No. 94*, 103 F.3d 923, 925 (9th Cir. 1996). The arbitrator is deemed not to have been construing or applying the CBA if his interpretation fails to qualify as a "plausible interpretation of the contract." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union, Local 752*, 989 F.2d 1077, 1083 (9th Cir. 1993); *accord SFIC Props., Inc.*, 103 F.3d at 924. An arbitrator's award is reversible when the arbitrator "'manifestly disregard[ed]' the contours of the agreement." *Phoenix Newspapers*, 989 F.2d at 1081 (*quoting Stead Motors of Walnut Creek v. Auto. Machinists Lodge. No. 1173*, 886 F.2d 1200, 1205 n. 6 (9th Cir. 1989) (en banc)); *see also United Food & Commercial Workers v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995) ("A court must limit its review to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement.").

In this case, the language of the CBA is clear and unambiguous: "All positive test results will result in termination." The arbitrator, however, found that this clause placed the burden on GP to show just cause for Pope's termination. Neither the arbitrator nor the Union cite a provision of the CBA that lends a plausible explanation to the arbitrator's

ORDER - 4

amendment. Therefore, the arbitrator's amendment is not based on any specific language in the CBA.

The Union argues that the amendment was based on the general framework and intent of the agreement. The first element of the CBA's drug testing plan is an "employee assistance plan." With regard to this element, the Decision provides as follows:

> The Arbitrator questions who can take advantage of the "employee assistance plan" if "all positive test results will result in termination." It does not appear that a person testing positive could take advantage of the employee assistance plan and/or being given a second or last chance.

Decision at 8. If the employee assistance plan was for employees who failed a drug test as well as employees who voluntarily sought assistance with their problem, then there would be no need for the explicit provision that "all positive tests will result in termination." Regardless, it is not a plausible interpretation of the general framework of the agreement to vitiate an employer's bargained for right, termination for positive results of a drug test, by expanding the employee's bargained for right, the assistance program.

The Union also argues that the arbitrator based his decision on his "substantial experience as a labor arbitrator. . . ." Dkt. 11 at 14. The Ninth Circuit has held that an award may also be upheld if it is based on the arbitrator's understanding of industry practices. *Federated Dept. Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 (9th Cir. 1990). An arbitrator is "not confined to the express terms of the contract" but may also consider the "industrial common law" which "is equally a part of the collective bargaining agreement although not expressed in it." *Id*. "The arbitrator's finding is not beyond the essence of the contract if it is derived from the arbitrator's unique expertise." *Id*.

In this case, the only unique aspect of the matter that was cited by the arbitrator was the severity of Polo's punishment compared to his pristine work record. On this issue, the arbitrator stated as follows:

ORDER - 5

> This Arbitrator finds this case unique. It is the first time in 39 years of serving as an arbitrator that I have encountered a case where a 25 year employee with an unblemished work record is being terminated. There was no negative testimony with regard to Mr. Polo. There was no discipline problems or absenteeism. It appears he performed his job well and valued his job. It is this Arbitrator's opinion that Mr. Polo's work and performance record of 25 years with the Company overrides his off-duty mistake and termination in this case is excessive punishment.

Decision at 9. The arbitrator failed to show that his implementation of just cause was even remotely based on "industrial common law" or unique employment expertise. The clear intent of the arbitrator's decision was based on Polo's unique circumstance. However, amending or altering the CBA based on a unique set of facts is not an action that derives its essence from the CBA.

Furthermore, the non-precedential nature of the Decision supports the conclusion that the arbitrator sought to enforce his own brand of justice. Individual justice is the only plausible explanation for an arbitrator to significantly alter or amend a CBA, which applies to every Union employee at GP, only to conclude that the alteration or amendment is non-precedential and "shall not be used by the Union or Employer as an example at a later date." If "just cause" was drawn from the essence of the drug treatment provision, then it would apply to Polo, an employee with greater tenure and a pristine record, or an employee with less tenure and a record of multiple violations. This was not the case as the arbitrator confined the holding only to Polo.

Therefore, the Court concludes that the arbitrator did not draw the "just cause" standard from the CBA. The only plausible conclusion is that the standard was drawn from the unique facts of the matter. While Polo's punishment seems excessive, the Ninth Circuit has held that an arbitrator may not provide individual justice based on unique factual situations. The Court is compelled to conclude that the arbitrator "dispensed his own brand of industrial justice by making an award that does not draw its essence from the collective bargaining agreement." *S. Cal. Gas Co.*, 265 F.3d at 792

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Union's motion for summary judgment (Dkt. 11) is **DENIED** and GP's motion for summary judgment (Dkt. 14) is **GRANTED**. The arbitrator's Decision is **VACATED**. The Clerk is directed to enter judgment for GP.

DATED this 8th day of November, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 7